JAMES B. STEPHENS, Appellant, v. JOSEPH KNOTT, Respondent.

### Appeal from Multnomah County.

The reservation in a sale of a ferry franchise read thus: "That said grantor and his family shall have all their ferrying across said ferry free from all charges or demands forever."—*Held*, that under those words, the grantor might engage in any ordinary business, and enforce his right of ferriage.

IN March, 1861, Stephens was the owner of a ferry franchise across Willamette river at Portland, in Multnomah county; which franchise he then sold to Knott, reserving in the indenture of sale, signed by both parties, the right of ferriage to himself and family, on the boats of Knott, the grantee, free of charge forever.

The words of the reservation are " that said James B. Stephens and his family shall have all their ferrying across said ferry, free from all charges or demands forever." Some time in March, 1868, a person, claiming to be the servant of Stephens, demanded a crossing at said ferry with certain loads of lumber, and was refused, and Stephens brought this action to recover for the non-compliance of Knott.

It appears from the report of the case, that at this time, 1868, Stephens was the owner of a saw-mill on his land, on the east bank of the Willamette river, opposite Portland, and that he owned timber adjoining said mill; that he had a contract with one New to the effect that New was to run said saw-mill, cut, and haul the logs at his own expense, and deliver the lumber on the mill yard. Stephens was, by the agreement, to take the lumber from the mill yard, and deliver it in the city of Portland, at his own expense; when the lumber was to be sold, and the proceeds divided equally between Stephens and New. Stephens hired one Guile to haul this lumber to Portland, at a certain stipulated price, he, Stephens, agreeing to pay the ferriage.

Knott obtained a judgment in the Circuit Court for costs, and Stephens brings the case here on appeal.

*Logan & Shattuck*, for appellant.

*D. Friedenrich, Esq.*, for respondent.

BOISE, J. By the contract Stephens was to haul this lumber to Portland. He could have hauled it with his own teams the same as any other product of his farm, if he had been engaged in furnishing vegetables for the Portland market. It is true that New had an interest in the lumber when it was in Portland, but he had no interest in the hauling for that was the business of Stephens alone, and it made no difference to New who paid the ferriage. Stephens and New had a common interest in the lumber when in the market prepared for sale; but they had no common interest or obli-

gation in the manufacturing and delivery; each had his separate part to perform. Suppose New had owned one hundred thousand feet of lumber on the east bank of the Willamette river, and Stephens, being a teamster, had contracted to haul it at three dollars per thousand to Portland; if he could claim ferriage under such a contract, then he could claim it as well if he had agreed to haul for one-third or one-half of the lumber, there would be no difference in the principle.

The question now is whether, under the reservation in the deed of Stephens to Knott, Stephens would be entitled to engage in the general business of hauling for hire across said ferry. The words of the reservation are general and of the broadest signification; no limitation is specified, and if the parties had undertaken to include all ordinary business in which Stephens should engage, they could not have chosen more apt language to convey such a meaning. We are, therefore, of the opinion that the hauling of the lumber, under the circumstances shown in the report of this case, comes clearly within the meaning of the reservation, and that by its terms Stephens was entitled to have it ferried by Knott.

                      The judgment is reversed.